IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRI SIMPSON | § | |
| Plaintiff, | § § § | |
| VS. | § § | NO. 3-10-CV-0518-BD |
| MICHAEL J. ASTRUE, Commissioner of Social Security | § § § § | |
| Defendant. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Terri Simpson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including a congenital deformity in her left arm, seizures, schizophrenia, depression, and chronic pain. After her application for disability benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on July 11, 2008. At the time of the hearing, plaintiff was 49 years old. She has a high school equivalency diploma and past work experience as a service attendant, a cashier/checker, and a sales attendant. Plaintiff has not engaged in substantial gainful activity since March 25, 2005.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that plaintiff suffered from a congenital deformity of her left upper extremity, impairment status-post left shoulder surgery, a seizure disorder, left shoulder

bursitis, left-sided hemiparesis, a lateral ventricular brain cyst, a history of peptic ulcer disease, facet hypertrophy at L5-S1, a schizoaffective disorder, depression, anxiety, ADHD, and alcohol dependence in remission, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform a significant range of sedentary work, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a call out operator and an appointment clerk -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In a single ground for relief, plaintiff contends that the ALJ improperly rejected the opinion of her treating psychiatrist, Dr. Vladislav Yeganov, who opined that plaintiff was unable to perform any work activity.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

The record shows that Dr. Yeganov treated plaintiff for approximately 15 months for depression, anxiety, and ADHD. (*See* Tr. at 405, 412-16). In a mental residual functional capacity questionnaire dated January 6, 2007, Dr. Yeganov noted that plaintiff's mental impairments caused her to experience a variety of serious symptoms, including a pervasive loss of interest in almost all activities, decreased energy, thoughts of suicide, generalized persistent anxiety, difficulty thinking

or concentrating, hyperactivity, illogical thinking, memory impairment, and sleep disturbance. (*Id.* at 406). Dr. Yeganov assessed plaintiff with a GAF score of 49,[1] indicating a serious impairment in social, occupational, or school functioning, including the inability to keep a job, and opined that plaintiff was "unable to perform any work activity [due to] markedly declined executive and cognitive skills." (*Id.* at 405). The ALJ rejected these opinions as not credible and unsupported by objective medical evidence. (*Id.* at 32). Instead, the judge accepted the opinions of several non-treating sources who determined that plaintiff's impairments resulted in no more than moderate functional limitations. (*Id.* at 31).

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 at *4 (SSA Jul. 2, 1996); *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

(1)  the physician's length of treatment of the claimant;

(2)  the physician's frequency of examination;

(3)  the nature and extent of the treatment relationship;

---

[1] GAF, or global assessment of functioning, is a standardized measure of psychological, social, and occupational functioning used in assessing a patient's mental health. *See Boyd v. Apfel*, 239 F.3d 698, 700 n. 2 (5th Cir. 2001). The GAF scale ranges from 100, denoting superior functioning, to 1, indicating that the patient is in persistent danger of severely hurting herself or others, has a persistent inability to maintain minimal personal hygiene, or has engaged in a serious suicidal act with a clear expectation of death. *See Brown v. Barnhart*, 285 F.Supp.2d 919, 924 n. 7 (S.D. Tex. 2003), *citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") at 20 (4th ed. 1994).

> (4) the support of the physician's opinion afforded by the medical evidence of record;
>
> (5) the consistency of the opinion with the record as a whole; and
>
> (6) the specialization of the treating physician.

See 20 C.F.R. § 404.1527(d). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. See *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

In a thorough and well-reasoned decision, the ALJ explained why he rejected Dr. Yeganov's opinion that plaintiff was unable to meet competitive work standards in all mental areas of functioning:

> I do not give controlling or significant weight to Dr. Yeganov's opinions in this questionnaire because they were incredible and not supported by the medical records, including his treatment notes and the treatment records and examination findings of the other treating and examining physicians. As discussed above, the prior consultative examination indicated Ms. Simpson functioned fairly well and had a good mental status examination. She had no more than moderate limitations. The prior treatment records from Ms. Simpson's treating physicians also do not indicate she exhibited severe or disabling mental limitations. She certainly did not have limitations or symptoms that would indicate she was unable to meet competitive work standards in all mental areas of functioning.
>
> In the questionnaire, Dr. Yeganov indicated that he had seen Ms. Simpson every 6-10 weeks since September 2005. Ms. Simpson's

> diagnoses were depression not otherwise specified, anxiety not otherwise specified, attention deficit and hyperactivity disorder (ADHD), and alcohol dependence in long-term remission. He noted Ms. Simpson had fair response to medication and psychotherapy treatment, but then wrote that Ms. Simpson was unable to perform any work activity because of markedly declined executive and cognitive skills. Her prognosis was poor. These statements are inconsistent. If her response to treatment was fair then she should not have marked limitations unless her prior condition was markedly limited or more than markedly limited. However, the prior treatment records do not indicate Ms. Simpson exhibited marked mental limitations. Additionally, Dr. Yeganov indicated Ms. Simpson did not have a low IQ or reduced intellectual functioning. If that were so, then how could she have markedly declined executive and cognitive skills? Additionally, many of the symptoms Dr. Yeganov indicated Ms. Simpson had are not supported by the record, such as anhedonia, appetite disturbance, decreased energy, current thoughts of suicide, somatization unexplained by organic disturbance, psychomotor agitation or retardation, persistent nonorganic disturbance of vision, speech, hearing, use of a limb, movement, or control, emotional lability, and illogical thinking. Dr. Yeganov's opinion that Ms. Simpson would likely miss more than 4 days of work per month is purely speculation not grounded in the evidence.
>
> In February 2007 Dr. Yegnaov noted Ms. Simpson was markedly improved with medication adjustment. Ms. Simpson denied any gross irritability, impulsivity, mood swings, depression, or gross anxiety. She was pleasant, calm, alert, and fully oriented with no hallucinations, delusions, or suicidal ideation. In September 2007 Dr. Yeganov noted Ms. Simpson had moderate hyperactivity and dysphoria. Nevertheless, Ms. Simpson was pleasant, calm, alert, and fully oriented with no hallucinations, delusions, or suicidal ideation. These treatment records do not indicate Ms. Simpson was unable to meet competitive work standards in all areas of metal functioning. They support the conclusion she had not more than moderate limitations.

(Tr. at 32-33) (internal citations omitted). This explanation constitutes "good cause" for giving the medical source opinion of Dr. Yeganov limited or no credence. Although the ALJ did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 1527(d)(2), he cited to the relevant regulations and social security rulings, indicating that each factor was considered. (*See id.* at 31-32).

The regulations require only that the Commissioner "apply" the section 1527(d)(2) factors and articulate good reasons for the weight assigned to the treating source opinion. *See* 20 C.F.R. § 1527(d)(2). The ALJ need not recite each factor as a litany in every case. *See Johnson v. Astrue*, No. 3-08-CV-1488-BD, 2010 WL 26469 at *4 (N.D. Tex. Jan. 4, 2010). Moreover, the statement by Dr. Yeganov that plaintiff is "unable to perform any work activity" is not a medical opinion and, thus, has no special significance. 20 C.F.R. § 404.1527(e)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination that claimant is "unable to work" is a legal conclusion reserved to the Commissioner).

Nor was the ALJ required to recontact Dr. Yeganov to clarify the record regarding plaintiff's alleged inability to work. Under the social security regulations, an ALJ is required to recontact a medical source only "[w]hen the evidence . . . from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." *Cornett v. Astrue*, 261 Fed.Appx. 644, 648, 2008 WL 58822 at *3 (5th Cir. Jan. 3, 2008), *quoting* 20 C.F.R. § 416.912(e). In this case, there is no indication that the ALJ found the evidence inconclusive or inadequate to render a decision, or that Dr. Yeganov could have provided any additional information that would have been helpful to plaintiff. Without such evidence, there is no basis for a remand. *See Newton*, 209 F.3d at 458 (remand required only if claimant shows prejudice resulting from ALJ's failure to request additional information); *Hector v. Barnhart*, 337 F.Supp.2d 905, 926-27 (S.D. Tex. 2004) (same).

Finally, the ALJ did not err in crediting the opinions of two state agency physicians over Dr. Yeganov. (*See* Tr. at 31). In July and December 2005, the state agency physicians who reviewed plaintiff's case determined that she had no more than moderate difficulty or functional limitations resulting from her mental impairments. (*See id.* at 212-24, 226-28, 392-94). The ALJ agreed with

those opinions and gave them considerable weight in determining that plaintiff had only moderate symptoms that did not prevent her from performing a significant range of sedentary work. (*Id.* at 31). An ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1984 (1995). Here, the ALJ credited those medical opinions that were most consistent with the record as a whole. Indeed, other than Dr. Yeganov's opinion, which was rejected for good cause, there is no evidence that plaintiff's mental impairments were disabling. Under these circumstances, the ALJ did not err in giving considerable weight to the opinions of the state agency physicians.

## **CONCLUSION**

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: March 31, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE